**John STALMASTER, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (SEPTA), Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 13, 1996.

Decided July 12, 1996.

August J. Lacko, for Petitioner.

James M. Connelly, for Respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and MIRARCHI, Senior Judge.

PELLEGRINI, Judge.

John Stalmaster (Claimant) petitions for review of the March 17, 1995 order of the Workmen's Compensation Appeal Board (Board) affirming its May 17, 1994 order of subrogation, but modifying that order to include Claimant's deduction for legal costs.

On December 12, 1983, Claimant was injured in an automobile accident while working as a bus driver for the Southeastern Pennsylvania Transportation Authority (Employer). Pursuant to a notice of compensation payable, Claimant received compensation at the maximum weekly rate of $306.

Claimant then initiated a third-party action against the City of Philadelphia (City). In July of 1988, Claimant's action against the City was settled for $175,000. As of the time of the settlement, the Employer had paid a total of $74,096 in compensation benefits, but, pursuant to agreement, Employer agreed to accept $30,000 in full payment of that past accrued subrogation. The trial court in the third-party settlement ordered:

- that a judgment creditor against Claimant be awarded $71,000 in settlement of its claim;
- that the Employer be paid $30,000 pursuant to agreement, which represented Employer's subrogation lien;
- that Claimant's counsel be paid the remaining funds.

Employer filed a petition for subrogation in 1988.[1] The Referee found that:

- Employer was entitled to $30,000 for settlement of its accrued compensation lien (ACL) out of Claimant's third-party settlement.
- Claimant agreed Employer is entitled to future credit out of that amount for future compensation payments.
- Claimant's counsel was entitled to reasonable litigation expenses of $8,947.35 for expenses incurred in the third-party action.
- Claimant was owed compensation from May 20, 1988, until the October 8, 1992 date of her order, in the amount of $306 per week for 222 weeks, for a total of $67,932.

In determining the credit owed Employer, the Referee deducted Claimant's legal costs but not counsel fees, and the $30,000 settlement amount to find that Employer was entitled to future credit against compensation of $43,402.65. In order to give Employer this credit, she ordered that Claimant's compensation be reduced from $306 to $206 weekly for 434 weeks.[2]

On appeal to the Board, Claimant contended[3] that the grace period set forth by the Referee was miscalculated because it did not give credit for legal fees associated with the third-party litigation. Claimant also contended that the full accrued compensation lien (ACL), $74,096, not just the $30,000 portion paid by the settlement agreement, should have been used in calculating Employer's grace period.

The Board indeed modified the Referee's order, but by increasing the grace period to 473.85 weeks based on the entire $306 per week compensation amount, not by reducing it as Claimant sought in his appeal. First, as to the amount of the ACL, the Board found that because Claimant had not proven that Employer agreed to use the full deduction, $74,096, in determining the grace period, the reduced payment of $30,000 was appropriate in determining the grace period.

---

1. In 1988, Employer also filed a petition to terminate alleging that as of May 28, 1988, all of Claimant's work-related disability had ceased, and the Claimant was able to return to work without restriction. Finding credible the testimony of Claimant's expert that he still suffered from his work-related injury and was unable to return to work, the Referee denied Employer's petition to terminate. Employer appealed to the Board, contending that the petition should have been granted because its medical testimony was more credible than that presented by Claimant. The Board affirmed the denial of Employer's termination petition, but the termination petition is not before us on appeal.

2. $100 per week × 434 weeks = $43,400, approximately the $43,302.65 credit the Referee held that Employer was entitled to.

3. Previously, the Board had held that issues as to the amount of the accrued compensation lien, the legal effect of an order entered by the Common Pleas Court in the third-party action, and an agreement made by Employer as to a waiver of subrogation were not based upon any of the factual issues raised by Claimant before the Referee, and the Board refused to address those issues. After the Board's determination, Claimant discovered that part of the Referee's record had not been forwarded to the Board. Because part of the record had not been forwarded from the Referee to the Board, the Board granted Claimant's motion for reconsideration. Upon reconsideration, the Board held that even upon additional review of the missing portion of the record, evidence as to third-party legal fees remained lacking. Moreover, upon that motion, the Board did address whether the full amount of the past ACL or the settlement amount should be used in determining the grace period, an issue which it had previously refused to address.

As to legal fees and costs incurred in the third-party action, the Board, finding that the record did contain proof of the third-party legal costs in the amount of $8,929.35, did not deduct those fees in its initial determination of the grace period, but did order subrogation with Claimant to be reimbursed during the grace period for the legal costs at a rate of $15.61 per week.[4] Regarding the fees, however, though Claimant's counsel did submit a copy of the contingency fee agreement between himself and Claimant which set counsel fees at 40% of Claimant's recovery and included a copy of "Respondent's [Employer's] Reply to Petition to Disburse Settlement Funds" in which Employer stated that it "would be willing to accept that a 40% contingency fee arrangement existed ...", the Board refused to give credit for any fees in calculating the grace period.

The Board found that the reply did not admit that any fee was paid to Claimant's counsel. It found that because Claimant provided no proof to substantiate that counsel's fee was actually paid, counsel fees could not be included in the calculation of the grace period owing to Employer and determined the post settlement credit due to Employer without reference to that fee. The grace period was arrived at by the Board by deducting the $30,000 settlement for the past

ACL from the $175,000 total third-party recovery, and dividing that sum by the weekly compensation rate of $306.

■ Claimant appeals,[5] contending that:

● the Board improperly denied reimbursement of counsel fees from Claimant's third-party settlement;

● the Board failed to give Claimant full credit for the Employer's past ACL in the amount of $74,096 where the Employer accepted $30,000 in full satisfaction of that lien;

● he was entitled to counsel fees due to Employer's unreasonable contest by its termination petition.

## I.

■ The Employer's right to subrogation of a third-party recovery is set forth by Section 319 of the Workmen's Compensation Act (Act).[6] This provision specifically requires that employer and claimant share pro rata the attorney's fees and costs involved in obtaining recovery in a third-party action. *Allegheny Beverage Corporation v. Workmen's Compensation Appeal Board (Wolfe)*, 166 Pa.Cmwlth. 646, 646 A.2d 762, 764 (1994), *petition for allowance of appeal denied*, 540 Pa. 590, 655 A.2d 520 (1995), *petition for writ*

4. This figure was reached by the Board's determination that legal costs of $8,929.35 constituted .051 of the $175,000 settlement, and $306 weekly compensation $\times$ .051 = $15.61/week.

5. On appeal, our scope of review is limited to a determination of whether Claimant's constitutional rights were violated, errors of law were committed, or whether substantial evidence supports the findings of fact. *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986).

6. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 671. Section 319 of the Act provides in relevant part:

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employee ... against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and

employee ... The employer shall pay the proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith the employee, his personal representative, his estate or his dependents, and shall be treated as an advance of payment by the employer on account of any future installments of compensation.

Where an employee has received payments for the disability of medical expense resulting from an injury in the course of his employment paid by the employer or an insurance company on the basis that the injury and disability were not compensable under this act in the event of an agreement or award for that injury, the employer or insurance company who made the payments shall be subrogated out of the agreement or award to the amount so paid, if the right to subrogation is agreed to by the parties or is established at the time of hearing before the referee of the board.
77 P.S. § 671.

of certiorari denied, —— U.S. ——, 116 S.Ct. 56, 133 L.Ed.2d 20 (1995). Under that section, Claimant must reimburse Employer for the past compensation paid to satisfy Employer's subrogation lien. *Id.* An employer may further benefit from a claimant's recovery from a third party where that recovery is large enough to provide additional funds to satisfy all or part of the future compensation obligation. *Pendleton v. Workmen's Compensation Appeal Board (Congoleum Corp.),* 155 Pa.Cmwlth. 440, 625 A.2d 187, 190 (1993). Those additional funds may provide an employer with a "grace period" in the future, during which the compensation owed by the employer is satisfied by the third-party recovery. *Id.*

■ Where a workmen's compensation claimant receives a third-party recovery, two considerations determine the amount of credit that the employer is to receive based on the third-party recovery. First, the employer's share of attorney fees and costs incurred in obtaining the third-party award or settlement must be determined. Second, based upon the claimant's net recovery in the third-party action, the payment of accrued compensation and, if sufficient funds, grace period from paying the weekly compensation to which the employer is entitled must be determined. *See Creighan v. Workmen's Compensation Appeal Board (Mellon Stuart Corp.),* 154 Pa.Cmwlth. 620, 624 A.2d 680 (1993); *Rollins Outdoor Advertising v. Workmen's Compensation Appeal Board (Maas),* 506 Pa. 592, 487 A.2d 794 (1985).

■ Both Claimant and Employer agree that the grace period during which Employer's compensation payments may be suspended is to be determined by what is referred to as the "net method". *See Dasconio v. Workmen's Compensation Appeal Board (Aeronca, Inc.),* 126 Pa.Cmwlth. 206, 559 A.2d 92 (1989). Under the "net method", the legal fees and costs are deducted prior to determining the grace period. While an employer receives a shorter grace period, it correspondingly has no obligation to weekly reimburse legal expenses attributable to the third-party recovery that makes the grace period possible. *Darr Construction Company and Rockwood Casualty Company v.*

*Workmen's Compensation Appeal Board,* 677 A.2d 1301 (Pa.Cmwlth.1996), citing *Baus v. Workmen's Compensation Appeal Board (Nelson Co.),* 137 Pa.Cmwlth. 121, 585 A.2d 573 (1991).

In *Dasconio,* we considered the proper application of a third-party recovery to the satisfaction of an ACL to the subsequent obligation, in light of the expenses attributable to obtaining that recovery. The facts in *Dasconio* are analogous to those of the instant matter. There, the claimant had received $120,203 in workmen's compensation benefits at the time he settled a third-party action for $700,000. The compensation insurer had agreed to accept $32,186 in full satisfaction for the past lien, though absent such agreement, would have been entitled to the full $120,203. After holding that an agreement for the satisfaction of past accrued liens is valid, we determined the applicable grace period by utilizing the following formula:

$$\text{GRACE PERIOD} = \frac{\begin{array}{l}\text{(gross recovery} \\ \text{from third party} \\ \text{action)}\end{array} - \begin{array}{l}\text{(total legal} \\ \text{expenses and} \\ \text{fees)}\end{array} - \begin{array}{l}\text{(accrued} \\ \text{compensation} \\ \text{lien)}\end{array}}{\text{weekly compensation amount}}$$

As in the instant matter, in *Dasconio,* the amount accepted in satisfaction of the lien was less than the amount actually paid, but because the agreement accepting that amount did not alter the amount actually paid, we held that the full ACL, $120,203, not $32,186, represented the "accrued compensation lien" figure used in the calculation.

■ Under *Dasconio,* Claimant contends that the Board erred in using the $30,000 that Employer received rather than the $74,096 amount of compensation that was actually paid in calculating the ACL. Like *Dasconio,* Employer here agreed to accept $30,000 in full satisfaction of the past ACL of $74,096. Though Employer did limit that agreement to the extent that acceptance of the $30,000 did not abrogate its right to receive credit against any future wage loss benefits payable to Claimant for the subject injury, the agreement did not indicate that the payment of $30,000 limited the actual amount of ACL bargained for to that $30,000. Because the agreement reached in no way altered the $74,096 amount actually paid, under *Dasconio,* that $74,096 full ACL should have been

deducted from Claimant's recovery when determining Employer's grace period.

## II.

■ Claimant contends that the Board erred in not giving credit for admittedly reasonable legal fees. Section 319 of the Act provides that Claimant's counsel is entitled to attorney's fees against the amount of the subrogation award recovered by the third-party settlement. As our Supreme Court stated in *Pennsylvania Manufacturers' Association Insurance Company v. Wolfe*, 534 Pa. 68, 626 A.2d 522, 525 (1993), "[t]he attorney must get *first* priority because the equitable doctrine of subrogation so dictates, and, most significantly, simple principles of fairness instruct us that, *but for the attorney's actions*, there would be no fund for *either* the worker's compensation carrier or for the client-injured employee." Moreover, "[s]ubrogation is an equitable principle and the subrogee carrier can have no greater rights than the subrogor employee." *Id.* 626 A.2d at 526.

■ Not disputing that the fees are reasonable, Employer's contention that Claimant is required to show that it paid those fees to his attorney prior to their being deducted from his gross recovery is somewhat disingenuous. First, the only party to receive any benefit from Claimant's third-party settlement was Employer, who did not dispute that the fee was reasonable and was aware of the order of attorney's fees from the trial court order. On a much broader level, whether the lawyer gives all or some of his fees back to claimant is not the employer's concern once it is determined that the fees incurred in obtaining the third-party recovery are reasonable. Because the fee is admittedly reasonable, that is enough to support the deduction of fees in the amount of $70,000.[7]

## III.

■ Claimant also contends that the Referee and Board erred by failing to award him attorney's fees based on an unreasonable contest of Claimant's compensation by Employer through Employer's termination petition. A reasonable contest is established in a workmen's compensation case where the medical evidence is conflicting or susceptible to contrary inferences, and there is no evidence that an employer's contest was filed to harass the claimant or was frivolous. *North Philadelphia Aviation Center v. Workmen's Compensation Appeal Board*, 121 Pa. Cmwlth. 633, 551 A.2d 609 (1988). Employer presented expert medical testimony that Claimant had recovered from his work-related injury. Consequently, the filing of its termination petition was reasonable. *See Lamberson v. Workmen's Compensation Appeal Board (U.S.Silica)*, 654 A.2d 668 (Pa. Cmwlth.1995).

Accordingly, the decision of the Board is reversed and remanded for a determination of the grace period applicable to Employer utilizing the full past accrued compensation amount and the applicable attorney's fees.

## ORDER

AND NOW, this 12th day of July, 1996, the order of the Workmen's Compensation Appeal Board, No. A92–2818, dated March 17, 1995, is reversed and this case is remanded for determination of the applicable grace period consistent with this opinion.

Jurisdiction relinquished.

7. Claimant's counsel also contends that Employer is collaterally estopped from contesting his right to attorney's fees since the trial court in the third-party proceeding held that he was so entitled. Because of the way in which we resolved this case, the collateral estoppel argument need not be addressed.